IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JOHN R. CUTTS,<br><br>   *Plaintiff*,<br><br>v.<br><br>CITY OF BERKELEY, OFFICER O'SHAY CONWAY, and OFFICER BRYAN SUTHERLAND, in their individual and official capacities,<br><br>   *Defendants*. | No. 4:24-cv-01102-JMD |

**MEMORANDUM AND ORDER**

Plaintiff John Cutts, a self-represented litigant, sued the City of Berkeley Police Department and Officers O'Shay Conway and Bryan Sutherland. The complaint alleges the City and officers violated the Constitution in how they responded to a 911 domestic disturbance call made by Cutts' wife. This matter is before the Court on the defendants' joint motion to dismiss. Cutts is entitled to proceed on just one claim: his claim that Officer Conway unlawfully searched his home. All his other claims fail as a matter of law and are dismissed.

**Factual Background**

When reviewing a motion under Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the nonmovant's favor. *Healy v. Fox,* 46 F.4th 739, 743 (8th Cir. 2022). But the Court is not bound by legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The following facts alleged in the complaint are therefore accepted as true for purposes of this motion to dismiss, and all doubt is resolved in favor of Cutts.

1

According to Cutts, officers responded to a domestic disturbance call made by Cutts' wife from his home in Berkeley, Missouri. Officer Sutherland detained Cutts in his front yard for about one hour, while neighbors looked on from their windows. Officer Conway then arrived and searched Cutts' home without a warrant or consent. Cutts' wife stated that Cutts had slapped her, but then recanted her allegation and said she was the instigator and had assaulted Cutts. Cutts was not arrested. The City later charged Cutts with two counts of domestic violence. These charges required several court appearances, fingerprinting in a public court location, and publication of the charges on Missouri's court documents system, Case.net. The case was dismissed after Officer Conway, a key witness, failed to appear at trial. The circuit court honored Cutts' request to remove the case from Case.net.

Cutts now sues the City and the officers in their official and individual capacities. Cutts' complaint contains six "legal claims and violations." ECF 29 at 3. Because complaints filed by laypeople "are to be given liberal construction," *Solomon v. Petray,* 795 F.3d 777, 787 (8th Cir. 2015), the Court will "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework," *id.* (internal citation omitted). But even *pro se* complaints "must allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon,* 623 F.2d 1282, 1286 (8th Cir. 1980) (per curiam).

Construing Cutts' amended complaint liberally, Cutts has filed a claim under § 1983 alleging: (1) a Fourth Amendment violation for a warrantless, nonconsensual search (Officer Conway); (2) a Fourth Amendment violation for unreasonable seizure during the outdoor detention lasting about one hour (both officers); (3) a Fourteenth Amendment due process violation for bringing a prosecution based on false information (all defendants); (4) malicious prosecution for initiating prosecution without probable cause (the City and Officer Conway);

2

(5) due process violations because of stigma he experienced; and (6) municipal liability for these claims under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for failure to sufficiently train employees.  Defendants move to dismiss all claims.

## Analysis

Section 1983 is not a source of substantive rights.  Instead, it is "a vehicle for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.  Accordingly, an underlying constitutional or statutory violation is a predicate to liability under section 1983." *Henley v. Brown*, 686 F.3d 634, 640 (8th Cir. 2012) (internal citations omitted).  To survive defendants' motion to dismiss, Cutts must allege sufficient facts to support an underlying constitutional or statutory violation.  With one exception, he fails to do so.

**I.     Counts One and Six: Fourth Amendment Claim Against Officer Conway and *Monell* Claim Against Conway and the City**

In Count One, Cutts alleges that Officer Conway unlawfully searched his residence without a "warrant, consent, or lawful justification." ECF 29 at 3.  Cutts claims that after he was already detained in his front yard, Officer Conway arrived and, without obtaining consent, conducted a warrantless search of his home.  ECF 29 at 2.  In the motion to dismiss, Officer Conway asserts that this allegation does not amount to an underlying Fourth Amendment violation because Officer Conway "accessed the home to question the accuser of Plaintiff (his wife) and investigate the reported crime." ECF 32 at 4–5.

At this stage of litigation, liberally construing the *pro se* complaint, the Court cannot agree with the motion to dismiss.  If what Cutts alleges is true, he has alleged "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss under Rule 12(b)(6), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Cutts' claim is not an

example of clarity. Without factual elaboration, he summarily says that the officer searched his house "without probable cause, consent or exigent circumstances." Arguably, Cutts has pleaded only a legal contention, and only the bare elements. And arguably, Cutts pleaded only that the officer "searched" the home simply by being in the home and observing the home while talking with Cutts' wife. But it is possible to liberally construe the complaint to allege that the officer searched inside the home beyond what was necessary to question Cutts' wife.

"The Fourth Amendment ordinarily requires that police officers get a warrant before" a search. *Lange v. California*, 594 U.S. 295, 298 (2021). "At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Thompson v. Cockrell*, No. 24-2120, 2025 WL 2657074, at *3 (8th Cir. Sept. 17, 2025) (quoting *Kyllo v. United States,* 533 U.S. 27, 31 (2001) (cleaned up)). While the Fourth Amendment permits many judicially recognized exceptions to the warrant requirement, *see Lange,* 594 U.S. at 298, the government does not specify any exception that would apply to the facts as alleged here, because Cutts alleges that he was already detained outside the home when police conducted the search. *See Caniglia v. Strom*, 593 U.S. 194 (2021) (finding a Fourth Amendment violation when the plaintiff had exited the property before the search).

According to Cutts' version of events, the officer did not have a warrant to search the home; Cutts was already detained in the front yard at the time, so there were no exigent circumstances; officers were not given consent for the search; and no arrest was made. ECF 29 at 2. The Eighth Circuit has held that "officers could not enter a residence without a warrant to arrest a domestic violence suspect after the suspect had relocated to a place where the alleged victim was not present." *Cotten v. Miller*, 74 F.4th 932, 935 (8th Cir. 2023)

4

(discussing *Smith v. Kansas City Police Dep't*, 586 F.3d 576, 580–81 (8th Cir. 2009)). Further, "[t]he arrest of a domestic violence suspect does not create exigent circumstances justifying a warrantless entry if there is no reason to believe that the suspect presents a danger to others at the location." *Id*. Cutts has therefore sufficiently alleged a constitutional violation.

For similar reasons, Conway is not yet entitled to qualified immunity, a defense to individual capacity claims that "shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As discussed above, at this early stage of litigation and based on Cutts' alleged version of events (liberally construed), the Court cannot conclude that there was no violation of Cutts' right to be free from warrantless searches.

For the second step of immunity, "[t]he relevant question is the objective (albeit fact-specific) question whether a reasonable officer could have believed the officers' warrantless entry to be lawful, in light of clearly established law and the information the officers possessed." *Burke v. Sullivan*, 677 F.3d 367, 372 (8th Cir. 2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)) (cleaned up). In the light most favorable to Cutts, the facts as pleaded are that Conway entered the home without a warrant and without consent *after* Cutts had already been removed from the home and that he searched the home beyond what was necessary to question Cutts' wife. The right to be free from this kind of search was clearly established when the events allegedly occurred. *See Caniglia*, 593 U.S. at 196 (2021) (holding that the community caretaking exception does not justify warrantless searches and seizures in the home absent a warrant, exigent circumstances, or another exception).

5

Conway has not established entitlement to qualified immunity on the face of the complaint, *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005), because Cutts has pleaded sufficient facts to show a potential constitutional violation that was clearly established at the time of this incident.

By contrast, Cutts fails to state a claim against Conway in Conway's official capacity. This claim duplicates Cutts' claim against the City itself because "[a] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent," *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006), and police departments are not suable entities as "[t]hey are simply departments or subdivisions of the City government," *Ketchum v. City of W. Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992). Cities and municipalities are suable entities under § 1983 only when the injury is caused by "execution of a government's policy or custom." *Monell*, 436 U.S. at 694 (1978).

This claim fails because Cutts has not pleaded the existence of a policy or custom under *Monell*. To survive a motion to dismiss under *Monell*, a plaintiff need not necessarily plead explicitly "the specific existence of an unconstitutional policy or custom," but the plaintiff must at least plead "allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom." *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). "A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Indep., Mo.*, 829 F.3d 695, 700 (8th Cir. 2016) (cleaned up). Alleging an unofficial custom requires alleging "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate

6

indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation." *Id.* (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014)).

Cutts' bare legal conclusion that "the municipality is liable for its failure to sufficiently train its employees" is simply insufficient to support a claim of unconstitutional policy or custom.[1] ECF 29 at 4. Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. *Iqbal*, 556 U.S. at 678. Cutts points to no *facts* tending to show that a City of Berkeley official made a deliberate choice to institute an official policy that is either unconstitutional on its face or in its implementation. His complaint does not provide any *factual* allegations to support a municipal liability claim. Despite his assertion that "Defendants acted with deliberate indifference to Plaintiff's constitutional rights," ECF 29 at 3, Cutts does not make any specific allegations of widespread misconduct and has not provided any *factual* allegations to support the contention that the City of Berkeley violated his constitutional rights because of an unofficial custom.

---

[1] Cutts appears to have attached an exhibit to his first amended complaint showing a Berkeley Police Department General Order regarding search and seizures. ECF 13. Cutts' exhibit appears to cut off some language, and Cutts alleges that this order was incomplete and is therefore a basis for *Monell* liability. Cutts then filed a second amended complaint. ECF 29. As "it is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect," *Allen v. Amsterdam*, 132 F.4th 1065, 1068 (8th Cir. 2025), best practice is for a plaintiff to reattach an exhibit. Cutts does not even reference the exhibit in his amended complaint and therefore fails to incorporate it. The Court thus considers only his operative complaint. In that operative complaint, his allegation against the City does not go beyond "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

7

Based on these facts, as alleged, the City of Berkeley cannot be held liable under *Monell*. Therefore, the Court grants this motion to dismiss as to the City of Berkeley, which necessarily includes the official capacity claims against Officer Conway. But because the complaint does assert a viable Fourth Amendment violation against Officer Conway in the officer's individual capacity, that portion of this claim survives the motion to dismiss.

## II.   Count Two: Fourth Amendment Unreasonable Seizure and Detention Claim

In Count Two, Cutts alleges violations under the Fourth and Fourteenth Amendments against both officers, asserting an unreasonable seizure because the officers detained Cutts in his front yard for about one hour "*without probable cause* or *reasonable suspicion*." ECF 29 at 4 (emphasis in original). Cutts asserts that Officer Conway did not "witness any violence, observe injuries, or receive consistent statements indicating a crime had occurred." *Id.* at 2. The Court agrees with the defendants that Cutts has not stated a claim under either amendment.

### A.   Fourteenth Amendment Claims

Cutts summarily alleges that the officers violated his Fourteenth Amendment rights. It is unclear whether Cutts seeks to pursue relief under the Equal Protection Clause or under the Due Process Clause. In either event, he fails to state a claim.

To the extent Cutts intends to claim an equal protection violation, he fails to allege facts to support that "he was a member of a protected class or that a fundamental right was violated," *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003), or that similarly situated classes of people are treated differently with no rational relation to a legitimate interest, *id*. Even a *pro se* complainant must allege facts that, if true, state a claim for relief as a matter of law. *See Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004) (explaining that even in a *pro*

8

*se* case, federal courts need not "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). Giving a *pro se* complaint the benefit of a liberal construction does not mean that courts should interpret the procedural rules of civil litigation "so as to excuse mistakes by those who proceed without counsel." *See McNeil v. United States,* 508 U.S. 106, 113 (1993). There is no viable equal protection claim on the face of Cutts' complaint.

To the extent Cutts alleges a substantive due process violation under the Fourteenth Amendment, this Court agrees with the defense that any substantive due process claim "falls away" in light of Cutts' argument under the Fourth Amendment. *Matthews v. McNeil*, 821 Fed. App'x. 666, 667 n.3 (8th Cir. 2020). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal citation omitted).

The crux of Cutts' claim appears to be one of unlawful detention. "The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Id.* at 274. Indeed, "[a]ny deprivation of … liberty before ... [a] criminal trial … is governed by the Fourth Amendment and its prohibition on unreasonable seizures." *Johnson v. McCarver*, 942 F.3d 405, 410–11 (8th Cir. 2019) (citing *Manuel v. City of Joliet*, 580 U.S. 357, 364–65 (2017)). The Court agrees that, to the extent Cutts wishes to sue over his seizure, he must do so under the Fourth Amendment, not the more nebulous doctrine of substantive due process.

9

## B. Fourth Amendment Claim of Unlawful Detention

But no stronger is Cutts' attempt to invoke the Fourth Amendment. Cutts asserts that, "[w]ithout investigating or observing any evidence of a crime," Officers Sutherland and Conway detained him in his front yard for one hour. ECF 29 at 2. Even assuming all Cutts' allegations are true, and even construing all facts in the light most favorable to Cutts, the facts are insufficient to support a claim of unreasonable detention.

Cutts satisfies the first hurdle by alleging a detention. The Fourth Amendment governs detentions that do not culminate in an arrest. "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16 (1968). The Fourth Amendment "governs all seizures of the person, including seizures that involve only a brief detention short of a traditional arrest." *United States v. Mendenhall*, 446 U.S. 544, 551 (1980) (cleaned up). Cutts alleges that he was "detained" for an "extended period." ECF 29 at 4. The Court will assume that, based on Cutts' version of events, Cutts was seized within the meaning of the Fourth Amendment.

But Cutts has not pleaded sufficient facts to establish that the seizure was legally unreasonable. In his complaint, Cutts admits that officers acted "in response to a domestic disturbance call made by Plaintiff's wife." ECF 29 at 1. "[T]o effect a temporary investigative detention," that satisfies the Fourth Amendment, "officers need only reasonable suspicion based on the totality of the circumstances." *Waters v. Madson*, 921 F.3d 725, 736 (8th Cir. 2019). This standard "is a lower threshold than probable cause," requiring "some minimal level of objective justification," *id.* (internal citations omitted), and it is satisfied when a person is reasonably believed to be "involved in criminal conduct," *Brown v. Texas*, 443 U.S. 47, 51–52 (1979). Here, officers knew that Cutts' wife had called 911, that they were

10

responding to a residence for a domestic disturbance call, and that Cutts was the alleged perpetrator of this violence. The totality of the circumstances, as alleged by Cutts, show that "based on commonsense judgments and inferences about human behavior," *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000), officers had reasonable suspicion to detain Cutts.

The temporary detention was also reasonable in manner and length. Courts have been clear that "officers should 'employ the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose' of the temporary seizure." *United States v. Maltais*, 403 F.3d 550, 556 (8th Cir. 2005) (quoting *United States v. Navarrete-Barron*, 192 F.3d 786, 790 (8th Cir. 1999)). "Reasonableness," the Supreme Court has said, "is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996).

First, the manner of detention. Cutts does not allege unreasonable force. If Cutts' allegation of "detention" is liberally construed as a claim of being handcuffed, the Eighth Circuit has "repeatedly held that police officers may reasonably handcuff a suspect . . . during the course of a *Terry* stop in order to protect their safety and maintain the status quo." *United States v. Smith*, 645 F.3d 998, 1002 (8th Cir. 2011). Cutts has not alleged facts sufficient to support a charge of excessive force or any unreasonable behavior in his detention by police officers responding to what Cutts concedes was a domestic disturbance call. Separating parties while investigating a domestic dispute complies with the Fourth Amendment, especially because "domestic disturbances are highly volatile and involve large risks." *United States v. Henderson*, 553 F.3d 1163, 1165 (8th Cir. 2009). Briefly detaining Cutts to protect a woman who had just dialed 911 to report a domestic dispute allegedly involving Cutts was not only objectively reasonable, but objectively sensible.

11

Second, the totality of the circumstances also favors the officers with respect to the length of the detention. "[T]here is no rigid time limit on an investigatory detention." *Maltais*, 403 F.3d at 556. The Supreme Court has "expressly rejected the suggestion that [it] adopt a hard-and-fast time limit for a permissible *Terry* stop." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). Instead, courts "consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* Detentions of over an hour are routinely ruled reasonable where police do so. *See, e.g.*, *United States v. White*, 42 F.3d 457, 460 (8th Cir. 1994) ("The wait of about one hour and twenty minutes pending arrival of the drug dog was a reasonable period to detain the truck."); *Maltais*, 403 F.3d at 556–58 (8th Cir. 2005) (about three-hour detention); *United States v. Montoya de Hernandez*, 473 U.S. 531, 544 (1985) (about 16-hour detention for suspected smuggler). Construing Cutts' complaint liberally, over the course of that hour, Officer Sutherland was either (1) waiting for Officer Conway to arrive or (2) separating Cutts from his wife, the alleged domestic violence victim, while Officer Conway investigated the domestic disturbance allegation made in the undisputed 911 call. Either way, Cutts has not alleged facts establishing that the length of time was objectively unreasonable.

This Court does not doubt that stopping a person in public is more than a "petty indignity," as it is "a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly." *Terry*, 392 U.S. at 17. Yet the Fourth Amendment also is not a weapon against police any time they investigate an emergency. Because Cutts failed to allege sufficient facts forming the basis of

12

an unreasonable detention claim, even with a liberal construction of his complaint, the Court grants the motion to dismiss this claim.

### III.     Count Three Violation of Due Process in Charging Decision

In Count Three, Cutts alleges that he suffered a "deprivation of liberty and violation of due process" when he was "charged with a crime based on *false or misleading information* knowingly included in a police report." ECF 29 at 4 (emphasis in original). This claim asserts a violation of the substantive due process doctrine.

In general, "the accused is not entitled to judicial oversight or review of the decision to prosecute." *Albright*, 510 U.S. at 274 (1994) (internal quotation marks omitted). The allegation of a violation of due process fails because charging a defendant without probable cause is a Fourth Amendment claim, not a due process claim. *Id.* at 274–75. "[S]ubstantive due process, with its scarce and open-ended guideposts can afford . . . no relief." *Id.* at 275 (internal citation omitted). This claim will therefore be folded into Cutts' claim of malicious prosecution.

### IV.     Count Four: Malicious Prosecution

In Count Four, Cutts alleges that the City maliciously prosecuted him for domestic assault, and that Conway initiated this prosecution. He asserts that the prosecution lacked probable cause and occurred after Cutts filed a departmental complaint against both officers. In his response to the motion to dismiss, Cutts clarifies that these charges are directed solely at Officer Conway and the City, not prosecutors or judges in their individual capacities. ECF 33 at 4.

Cutts' claim for malicious prosecution fails for one simple reason: he alleges no seizure in connection with the prosecution (as opposed to the initial one-hour seizure associated with

13

the initial investigation). "[A] Fourth Amendment malicious-prosecution suit depends not just on an unsupported charge, but on that charge's causing a seizure." *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 564 (2024). Here, Cutts has asserted (at most) only that the defendants lacked probable cause. Although Cutts was seized during the one-hour investigation, that detention was supported by reasonable suspicion, and he was not arrested after that brief detention or after any charge was filed. Nor does he allege any other seizure any other time during the prosecution. Cutts alleges that he was "compelled to appear in municipal court" and provide fingerprints, ECF 29 at 2, but "no court has held that a summons alone constitutes a seizure" within the meaning of the Fourth Amendment. *Brown v. City of Dermott Ark.*, 151 F.4th 985, 990 (8th Cir. 2025) (cleaned up). Indeed, the Eighth Circuit "has never held that pretrial restrictions such as being forced to post bond, appear in court, or made to answer charges constitute a Fourth Amendment seizure." *Wendt v. Iowa*, 971 F.3d 816, 819 (8th Cir. 2020) (cleaned up). As other courts have determined, "the view that an obligation to appear in court to face criminal charges constitutes a Fourth Amendment seizure is not the law." *Nieves v. McSweeney*, 241 F.3d 46, 55 (1st Cir. 2001). Cutts has not alleged a seizure, so any Fourth Amendment claim for malicious prosecution must fail. Because Cutts has failed to allege a claim in Count Four, this count is dismissed.[2]

---

[2] Cutts does not clearly assert a claim under state law for malicious prosecution—which would have different elements than the federal claim. While *pro se* pleadings are interpreted liberally to "encompass any allegation stating federal relief," *White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976) (per curiam), courts are not required to "divine the litigant's intent and create claims that are not clearly raised," *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 840 (8th Cir. 2004).

14

## V.     Count Five: Stigma-Plus Claims

No stronger is Cutts' attempt to sue over reputational harms.  Cutts' theory is that the defendants harmed his reputation by publishing court documents online, requiring him to receive court-mandated fingerprinting, requiring him to attend court hearings, and detaining him in his yard where he was visible to neighbors.  Cutts believes these actions violated his due process rights.  But Cutts has not pleaded everything necessary to make a claim under the Due Process Clause.

Specifically, he has failed to plead the denial of a liberty or property interest.  Damage to reputation alone is insufficient to "invoke the procedural protection of the Due Process Clause."  *Paul v. Davis*, 424 U.S. 693, 701 (1976).  The Due Process Clause protects rights to "life," "liberty," and "property."  So under the "stigma plus" doctrine, a plaintiff invoking that clause to seek redress for reputational injury must allege not only damage to the plaintiff's reputation, but also "that he was stigmatized in connection with a denial of a right or status previously held under state law," *Mangan v. Cullen*, 870 F.2d 1396, 1399 (8th Cir. 1989), or that he was denied "a protectible property interest," *Gunderson v. Hvass*, 339 F.3d 639, 644 (8th Cir. 2003).  In the Eighth Circuit, this doctrine typically has arisen in the context of government employees or independent contractors.  *See Jones v. McNeese*, 746 F.3d 887, 898 (8th Cir. 2014) ("Although Paul's 'stigma-plus' test arises most often in situations where the plaintiff is (or was) a government employee, the liberty interest also extends to independent contractors.") (internal citation omitted).

Cutts asserts that he experienced an unlawful "change in legal status" because of the fingerprinting, court appearances, and detention in his front yard.  Not so.  Even if this Court accepts Cutts' premise that the stigma-plus doctrine applies outside the employment and

15

contracting contexts, none of these things amounted to an unlawful change in legal status. The Court has already concluded that the detention in Cutts' yard was lawful. So, too, mandatory court appearances were not an unlawful change in legal status. Just the opposite. The court appearances were designed to determine *whether* to change his legal status. His legal status was not changed. He was not even arrested.

Finally, as to the court-mandated fingerprinting, that too was lawful. Cutts appears to rest his claim on his assertion that there was no probable cause to criminally charge him. Even if true, that makes no difference for two reasons. First, a municipal judge ordered the fingerprinting. ECF 29 at 2. When a judge authorizes fingerprinting within the scope of the judge's duties, that renders the fingerprinting legally reasonable under the Fourth Amendment, even without probable cause or an arrest. *See Hayes v. Florida*, 470 U.S. 811, 815 (1985) (determining that fingerprinting can be unlawful when done "absent probable cause or judicial authorization"). Cutts has no constitutional right to avoid standard fingerprinting that accompanies most criminal proceedings. Second, probable cause is not necessary for fingerprinting. Reasonable suspicion may be enough. *See Hayes*, 470 U.S. 816 ("None of the foregoing implies that a brief detention in the field for the purpose of fingerprinting, where there is only reasonable suspicion not amounting to probable cause, is necessarily impermissible under the Fourth Amendment."). Cutts does not dispute—and indeed cannot dispute—that a 911 call by an alleged domestic victim is sufficient for reasonable suspicion that a crime had occurred.

Fingerprinting is also reasonable when, as here, a person is about to be tried. "In every criminal case, it is known and must be known who has been arrested and who is being tried." *Hiibel v. Sixth Jud. Dist. Court of Nev., Humboldt Cnty.*, 542 U.S. 177, 191 (2004).

16

Fingerprint identification is a standard, quick procedure for ensuring identification. *Hayes*, 470 U.S. at 816–17; *see also Maryland v. King*, 569 U.S. 435, 458 (2013) ("Finger printing seems to be no more than an extension of methods of identification long used in dealing with persons under arrest for real or supposed violations of the criminal laws.") (internal citation omitted). Because Cutts fails to allege a valid plus factor for his stigma-plus claim, his claim must fail.

**IT IS HEREBY ORDERED** that the motion to dismiss is denied in part and granted in part. Counts Two through Five are **DISMISSED**. Count One is **DISMISSED** as to the City of Berkeley and Officer Conway in the officer's official capacity, but survives as to Officer Conway in Conway's individual capacity. To the extent it exists as a separate claim, Count Six is also **DISMISSED**.

Dated this 10th day of November, 2025

_____
JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE