IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

JOHN R. CUTTS,

　　　*Plaintiff,*

v.

OFFICER O'SHAY CONWAY,

　　　*Defendant.*

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 4:24-cv-01102-JMD

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

John Cutts asserts that Officer Conway violated his right to be free from unreasonable searches under the Fourth Amendment when Officer Conway entered his home during a domestic dispute and briefly glanced into a back room. But the search was consensual—and even if not, Officer Conway would be entitled to qualified immunity. Officer Conway's motion for summary judgment is granted.

## Background

On a motion for summary judgment, the Court views all facts in "the light most favorable to the nonmoving party." *Eastling v. BP Prods. N. Am., Inc.*, 578 F.3d 831, 836 (8th Cir. 2009). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007). But because Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no *genuine* dispute as to any material fact" (emphasis added), the Court owes deference to the nonmoving party's version of the facts only where those facts are not "blatantly contradicted by the record," *Scott,* 550 U.S. at 380.

Officer Conway responded to a domestic disturbance call at Cutts's residence on August 5, 2024. ECF 61 ¶¶ 1, 3. Officer Conway went inside and spoke with Cutts's wife,

1

Melissa Mitchell, who had called 911 to report domestic abuse.  *Id.*  ¶¶ 1, 4.  Mitchell told Officer Conway that Cutts had slapped her in the face after she asked Cutts to watch TV somewhere else.  *Id.* ¶ 5.  She reported that Cutts threatened to "f*ck [her] up tonight."  *Id.* Officer Conway then spoke with Cutts, who was detained outside, away from Mitchell.  *Id.* ¶ 6.  Cutts denied slapping Mitchell and claimed that Mitchell had in fact pushed him and knocked potato chips out of his hand while he was trying to watch the news.  *Id.* ¶¶ 7, 8. Cutts told Officer Conway: "I know you see them potato chips on the floor," to which Officer Conway responded "nah, I didn't see any chips on the floor."  *Id.* ¶ 9.  Cutts replied: "oh, in the back room, yeah.  All over the floor.  I had a broom when y'all got here."  *Id.*

Officer Conway went back inside.  *Id.* ¶ 10.  Mitchell began recanting her story, claiming that she had pushed Cutts.  *Id.* ¶11.  Officer Conway asked whether she pushed Cutts or knocked the chips out of Cutts's hand.  *Id.* ¶ 12.  Mitchell said she "grabbed the chips out of [Cutts's] hand and threw them all over the room" and then, "[w]hen he came out here, I pushed him out of the way."  *Id.*  Officer Conway then asked Mitchell: "where'd you knock these chips out of his hand at?"  *Id.* ¶ 13.   She responded, "in the back room."  *Id.*  Officer Conway asked: "this room right here?"  *Id.*  The parties dispute whether Mitchell motioned toward the back room but agree that Mitchell did not object when Officer Conway then moved toward the back room and briefly examined it.  *Id.*; ECF 63 at 2.  Officer Conway stood in the doorway and glanced around the room for fewer than 30 seconds.  ECF 61-2.  He did not touch anything.  ECF 61 ¶ 14.  Officer Conway spoke with Mitchell again and left the house. *Id.* ¶ 16.

Cutts sues under 42 U.S.C. § 1983, alleging a violation of the Fourth Amendment for Officer Conway's brief search of the back room.  ECF 29 at 3.  The Berkeley Police Department provided Officer Conway's body camera footage, a supporting affidavit from the

custodian of records, and an affidavit from Officer Conway.  Cutts did not appear for his scheduled deposition.  ECF 66-1.  He provided no affirmative evidence.

**Analysis**

No Fourth Amendment violation occurred if Cutts or Mitchell consented to Officer Conway's brief glance into the back room of the house.  The Fourth Amendment does not bar all searches, only "unreasonable ones."  *United States v. Hoeft*, 128 F.4th 917, 920 (8th Cir. 2025).  Consensual searches are reasonable under the Fourth Amendment because it is "no doubt reasonable for the police to conduct a search once they have been permitted to do so."  *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).  Consent can be express or implied. *United States v. Williams*, 521 F.3d 902, 906 (8th Cir. 2008).  Implied consent can be determined from gestures, motions, actions, and even body language.  *United States v. Faler*, 832 F.3d 849, 853 (8th Cir. 2016) (collecting cases).  Consent is assessed objectively, not subjectively.  *United States v. Pena-Ponce*, 588 F.3d 579, 584 (8th Cir. 2009).  What matters is "whether a reasonable officer would believe consent was given."  *Id.*

The totality of circumstances establishes consent for Officer Conway to search the back room.  To corroborate his version of events, Cutts stressed that there were chips on the floor.  He even went so far as to say that Officer Conway should have seen the chips already. And when Officer Conway denied seeing the chips, Cutts gave no indication that the officer should refrain from looking at the chips.  Instead, he reiterated that the chips were "in the back room, yeah, . . . [a]ll over the floor."  ECF 61 ¶ 9.  A "typical reasonable person" would consider Cutts's discussion of the chips as an invitation to corroborate Cutts' story by looking at the chips on the floor.  *Jimeno,* 500 U.S. at 251.

Mitchell's actions also signaled intent to search.  After talking to Cutts about the chips, Officer Conway reentered the house and asked Mitchell about the chips.  Mitchell helped guide Conway toward the back room and did not object when he walked there.  Under

3

the totality of the circumstances, it was reasonable for Officer Conway to believe that both Cutts and Mitchell "freely and voluntarily" consented to his entry into the back room. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973).

The scope of the search did not exceed the scope of consent because the "expressed object" of the search was the chips on the floor in the back room, which was the focus of the search. *Jimeno*, 500 U.S. at 251. Cutts argues that Officer Conway's "attention was drawn beyond the immediate location of the chips" to the bed, dresser, and bookshelf. ECF 63 at 3. But once lawfully in the back room, Officer Conway was not required to "shield [his] eyes" from other surfaces in the room. *California v. Ciraolo*, 476 U.S. 207, 213 (1986). And Cutts's consent could "reasonably be understood to extend" to the area around the chips. *Jimeno*, 500 U.S. at 252. Officer Conway stood in the doorway to the back room for twenty-three seconds. ECF 61-2 at 16:01–16:24. He did not touch anything. *Id.* He did not open any drawers. *Id.* He did not enter beyond the doorway threshold. *Id.* He simply looked at the chips on the floor, briefly looked around the room, and left. *Id.* Cutts "placed no qualifications or limitations upon his consent" to have Officer Conway look at the chips on the floor in the back room. *United States v. Ferrer-Montoya*, 483 F.3d 565, 568 (8th Cir. 2007). Officer Conway looked around in a "minimally intrusive manner," and did not damage any property. *Id.* This search was authorized by consent, and it is "wholly valid." *Schneckloth*, 412 U.S. at 222. Because both Cutts and Mitchell consented to Officer Conway's search, and because the search did not exceed the scope of either party's consent, Cutts's claim fails.

Cutts asserts that the "body camera footage does not conclusively establish consent . . . and is subject to multiple reasonable interpretations." ECF 63 at 3. The Court disagrees. But even if true, any ambiguity would merely entitle Officer Conway to qualified immunity, which "shields federal and state officials from money damages unless a plaintiff

4

pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This protection extends to an officer's "reasonably unreasonable" conclusions. *Kelsay v. Ernst*, 933 F.3d 975, 981 (8th Cir. 2019) (citing *Anderson v. Creighton*, 483 U.S. 635, 643–44 (1987)). Officer Conway did not clearly lack consent, because consent was at worst ambiguous.

"In light of clearly established law and the information" Officer Conway possessed, a reasonable officer could certainly "have believed [his] warrantless [entry] to be lawful." *Burke v. Sullivan*, 677 F.3d 367, 372 (8th Cir. 2012) (citation omitted). Officer Conway's actions were "objectively reasonable in light of the facts and circumstances confronting the officer." *Smith v. Kan. City, Mo. Police Dep't*, 586 F.3d 576, 581 (8th Cir. 2009). Because it was not clearly established that Officer Conway's actions violated the Fourth Amendment, he is protected by qualified immunity.

**Conclusion**

**IT IS HEREBY ORDERED** that Officer Conway's motion for summary judgment, ECF 59, is GRANTED.

Dated this 29th day of May, 2026

_____
JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE
FOR THE EASTERN AND WESTERN
DISTRICTS OF MISSOURI

5
